[Civ. No. 18288.   First Dist., Div. Two.   May 18, 1959.]

THE PACIFIC TELEPHONE AND TELEGRAPH COM-
PANY (a Corporation), Respondent, v. PACIFIC GAS
AND ELECTRIC COMPANY (a Corporation) et al.,
Appellants.

Boyd, Taylor, Nave & Flageollet for Appellants.

Bronson, Bronson & McKinnon for Respondent.

KAUFMAN, P. J.—This is an appeal from a judgment in favor of the plaintiff, Pacific Telephone and Telegraph Company, in an action to recover sums paid to settle a wrongful death action against Pacific Telephone and Telegraph Com-

pany, brought by the heirs of one Leon Pettus. Pettus, an employee of defendant Coast Counties Gas and Electric Company, a subsidiary of defendant Pacific Gas and Electric Company,* was killed while working on a pole owned jointly by P. G. & E. and Pacific Telephone Company. The sole issue on appeal is whether P. G. & E. is obliged to indemnify Pacific Telephone under the terms of a written agreement.

The facts are not in dispute. On December 11, 1914, Pacific Telephone and Coast Counties entered into a written "joint-pole" agreement, which was amended in 1936, and remained in full force and effect thereafter. As far as relevant, this agreement provided:

"First-D. Each of the parties hereto shall place and maintain, at its own risk and expense, its wires, cables, cross-arms, fixtures and appurtenances thereto in a safe condition, in thorough and complete repair and in conformity with the specifications contained in the Seventh Section of this agreement and the duly authorized laws, regulations and ordinances that may apply, and shall promptly replace or repair any defective part thereof when notified so to do by the other party in writing."

"Sixth: Each party shall indemnify and save harmless the other party from any and all loss, damages and liability, including liability to third persons, caused by any negligence or wrongdoing on the part of the former or by its neglect to perform any of its covenants herein contained. If any loss or damage shall be suffered or any liability to third persons shall be incurred by either or both of the parties hereto by reason of the installation, maintenance or operation of any of the wires, fixtures or appliances of either of the parties hereto upon said jointly owned poles, and if the cause of such loss, damage or liability shall be the joint or concurrent negligence or wrongdoing of both parties hereto or the negligence or wrongdoing of some third party for which neither of the parties hereto is responsible, or is so obscure that it cannot be ascertained by whose negligence or wrongdoing such loss, damage or liability was caused, then in every such case each party hereto shall bear all loss and damage which it shall suffer in respect to its own property and shall bear and defray all liability which it shall incur for injury to its own employees and shall bear and defray the expenses and fees of

---

*Hereafter, for convenience, the parties will be referred to as Pacific Telephone, Coast Counties and P.G. & E.

its own attorneys and all other loss, damage or liability caused as in this paragraph specified, together with all expenses, charges and costs incurred in connection therewith, shall be borne and paid by the parties hereto jointly and in equal shares.''

During 1936, Coast Counties installed Pole Number 12,368 on Sunset Beach Road in Santa Cruz County, and equipped with electrical apparatus and wires. In 1947, Pacific Telephone, acting under the joint-pole agreement purchased one-half of the bare pole and installed a telephone circuit. The pole was thereafter identified by the parties as Joint Pole 24. In 1948, Coast Counties installed additional electrical equipment. Each company inspected, maintained and repaired its own equipment on Joint Pole 24.

On August 1, 1952, Leon Pettus, who was employed as a lineman by Coast Counties, climbed Joint Pole 24 for the sole purpose of working on Coast Counties' electrical equipment. On that date, the clearance between two of Coast Counties' wires was ½-2 inches instead of the 6 inches required by General Order 95 of the State of California Public Utilities Commission, and one wire was so installed that it was too short for the required clearance. This condition caused the electrocution and instant death of Leon Pettus. The apparatus of Pacific Telephone on Joint Pole 24 was carefully and properly installed and maintained and did not cause or contribute to the death of Pettus.

As the heirs of Pettus were prevented by the Workmen's Compensation Act from suing Coast Counties and P. G. & E., they filed a wrongful death action against Pacific Telephone on the theory that Pacific Telephone's ownership interest in the pole made it liable to a third party for a dangerous condition, however created. In 1954, defendant Coast Counties was merged into defendant P. G. & E., which assumed all the liabilities and obligations of Coast Counties. Pacific Telephone tendered the defense of the Pettus action to P. G. & E. P. G. & E. refused the tender and refused to acknowledge any obligation under the Joint Pole Agreement. In July, 1955, Pacific Telephone settled the Pettus action for the sum of $24,150. Coast Counties asserted the statutory lien of an employee because of death benefits paid (Lab. Code, § 3860) against this sum and received $5,264.96. The balance was paid to the heirs of Pettus by Pacific Telephone. In September 1955, Pacific Telephone filed this suit for the indemnity provided in the agreement. The complaint stated two

causes of action: the first for breach of contract; the second for negligence, and sought damages in the amount of $33,-658.05, ($24,150 plus costs and attorneys fees). The case was tried without a jury. The trial court found the facts as stated above and concluded that the first portion of indemnity agreement called for complete indemnity to Pacific Telephone. Judgment for the plaintiff was entered accordingly.

P. G. & E. argues on appeal that this judgment must be reversed because: (1) The trial court ignored the written agreement and went beyond its terms to base its conclusion on common law theory of indemnity; (2) The agreement provided that each party was to defray all liability to its own employees and P. G. & E. had done so by complying with the Workmen's Compensation Act; (3) Pacific Telephone's "voluntary" payment precluded recovery.

There is no merit in any of these arguments. Under the agreement, each party covenants to place and maintain and repair its own electrical apparatus in conformity with applicable laws and regulations. It is not disputed that here P. G. & E. failed to do so and that this failure was the sole cause of the death of Pettus. The first sentence of the sixth paragraph of the indemnity clause provides that "[e]ach party shall indemnify the other party . . . *from any and all loss* . . . including liability to third parties . . . caused by any negligence or wrongdoing on the part of the former, *or* by its *neglect to perform any of the covenants herein contained.*" (Emphasis supplied.) The second sentence is also phrased in the alternative and applies to different situations than the first: where the loss or damage is caused by either the joint and concurrent negligence of both parties, or the negligence or wrongdoing of some third party, or the cause of loss is so obscure that it cannot be ascertained by whose wrongdoing or negligence the loss was caused. Under the facts here found, the first sentence is the applicable one. The same conclusion was reached in *Booth-Kelly Lumber Co.* v. *Southern Pac. Co.,* 183 F.2d 902, which is similar to the instant case and answers many arguments raised here by P. G. & E.

P.G. & E. argues that the trial court went beyond the terms of the agreement, as a contract of indemnity may not be construed to indemnify a party against his own negligence, citing *Sproul* v. *Cuddy,* 131 Cal.App.2d 85 [280 P.2d 158], and *Pacific Indem. Co.* v. *California Electric Works, Ltd.,*

29 Cal.App.2d 260 [84 P.2d 313]. These cases, however, hold merely that in the absence of express language, a contract of indemnity may not so be construed. *Southern Calif. Gas Co.* v. *Ventura etc. Co.*, 150 Cal.App.2d 253 [309 P.2d 849], also cited, held that the indemnity agreement did not by its terms cover the obligation. In *Werner* v. *Knoll*, 89 Cal.App. 2d 474 [201 P.2d 45], where the contract expressly so provided, it was held that the indemnitee was indemnified against his own negligences.

P. G. & E. further argues that Pacific Telephone made a "voluntary" payment. A volunteer has been defined as a person who has made a payment (without compulsion) of a debt of a third party without request and with no promise of repayment from the party whose debt is paid. (*McMillan* v. *O'Brien*, 219 Cal. 775 [29 P.2d 183, 91 A.L.R. 383].) Here, there was the compulsion of a suit by the Pettus heirs and of Labor Code, section 3860, as well as a promise of repayment in the written indemnity contract. (*Southern Pac. Co.* v. *Fellows*, 22 Cal.App.2d 87 [71 P.2d 75]; *Alberts* v. *American Casualty Co.*, 88 Cal.App.2d 891 [200 P.2d 37].)

P. G. & E. argues that since it alone was responsible for the loss, Pacific Telephone could not be liable to a third person. However, Pacific Telephone's liability here was based on its joint ownership of the pole. (*Emery* v. *Pacific Tel. & Tel. Co.*, 43 Cal.App.2d 402 [110 P.2d 1079]; *Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182 [106 P. 587].) As pointed out in *Booth-Kelly Lumber Co.* v. *Southern Pac. Co.*, *supra*, the fact that the indemnitee may be held to be at fault to a third person is the very reason for the first part of the indemnity agreement. Otherwise, the provision would be unnecessary.

Furthermore, where the indemnitee notifies the indemnitor of a pending claim and "the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability or the actual amount of the damage. (Citations.) A contrary rule would make the right to settle meaningless in cases where the indemnitor has denied liability." (*Chicago, R.I. & P. R. Co.* v. *Dobry Flour Mills* (1954), 211 F.2d 785 at 788.) This is the general rule throughout the country (see 142 A.L.R. 812) and was recently applied to an in-

demnity clause in an insurance policy in *Peterson* v. *All State Insurance Co.*, 164 Cal.App.2d 517 [330 P.2d 843].

■ P. G. & E.'s final argument is that the Workmen's Compensation Act exonerated it as a matter of law from any responsibility to Pacific Telephone. Our Supreme Court has ruled that the Workmen's Compensation Act affects only the employer-employee relationship, and does not affect other relationships under a written contract. (*Baugh* v. *Rogers*, 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043]; *Singleton* v. *Bonnesen*, 131 Cal.App.2d 327 [280 P.2d 481]; see also *San Francisco Unified School Dist.* v. *California Bldg. etc. Co.*, 162 Cal.App.2d 434 [328 P.2d 785]; *cf. Ryan Co.* v. *Pan-Atlantic Corp.*, 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133].)

■ While the Workmen's Compensation Act protects an employer from actions brought against it by its employee on account of tortious conduct causing injury to the employee, there are no logical grounds for relief from the full consequences of an independent contractual obligation, voluntarily assumed, to a third party. P. G. & E. agreed to keep its apparatus on the joint pole in a safe condition and indemnify Pacific Telephone for any resulting loss.

In view of the foregoing, the judgment must be affirmed. Judgment affirmed.

Dooling, J., and Draper, J., concurred.