**JONES–HAMILTON COMPANY, Plaintiff,**

v.

**KOP–COAT, INC., Beazer Materials and Services, Inc., and Koppers Company, Inc., Defendants.**

**No. C–90–0169 EFL.**

United States District Court, N.D. California.

Nov. 20, 1990.

James R. Arnold, Pettit & Martin, San Francisco, Cal., for plaintiff.

James L. Meeder, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

LYNCH, District Judge.

Plaintiff, Jones–Hamilton Company, has brought this action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* Plaintiff alleges that defendants, Kop–Coat, Inc., Beazer Materials and Services, Inc., and Koppers Company, Inc., should contribute to the cost of responding to the illegal disposal of certain hazardous substances from plaintiff's chemical formulation facility. Plaintiff and defendants have filed cross-motions for summary judgment. For the reasons set forth below, the Court grants defendants' motion for summary judgment and denies plaintiff's motion for summary judgment.

## I. BACKGROUND

The following facts are not in dispute. On August 31, 1970, plaintiff and defendants entered into a written agreement ("the agreement") under which plaintiff was to formulate raw materials to be provided by defendants into wood preservation compounds.[1] Under the agreement, defendants retained title to the raw materials and title to the finished products at all times. The agreement contained a provision ("the indemnity clause") which provided as follows:

> [Plaintiff] agrees to comply with all applicable Federal, State and local laws, ordinances, codes, rules and regulations and to indemnify [defendants] against all losses, damages and costs resulting from any failure of [plaintiff] or any of its employes [sic], agents or contractors to do so.

Plaintiff formulated defendants' raw materials into wood preservation compounds under the agreement from 1970 until some time in 1984. An agent of defendants was present at plaintiff's facility during the formulation process. Although the agent's full role in the formulation process is disputed, it is clear that his duties included, at a minimum, insuring that plaintiff maintained quality control standards that were acceptable to defendants.

On August 27, 1970, four days before the formulation agreement was signed, the California Regional Water Quality Control Board ("the Water Quality Board") issued a waste discharge permit ("the permit") to plaintiff. The permit prohibited plaintiff from discharging chemicals other than

---

1. Plaintiff entered into the agreement with Wood Treating Chemicals Company ("WTCC"), an entity which is no longer in existence. Plaintiff alleges that the defendants, Kop–Coat, Inc., Beazer Materials and Services, Inc., and Koppers Company, Inc., are successors in interest to WTCC. Kop–Coat, Inc. contends that it is not a successor in interest to WTCC and that it should therefore be dismissed from this action. Because the Court grants defendants' motion for summary judgment on other grounds, it is not necessary to reach the issue of whether Kop–Coat, Inc. is a successor in interest to WTCC. For purposes of this opinion only, the Court assumes that all three defendants are successors in interest to WTCC and refers to the defendants collectively.

"chlorides, sulfates, phosphates and carbonates" into plaintiff's waste water containment ponds. Notwithstanding the permit, plaintiff released prohibited chemicals into its ponds during the process of formulating defendants' compounds. On March 14, 1985, the Water Quality Board found that plaintiff had violated its permit. The Water Quality Board ordered plaintiff to conduct an investigation to determine the extent of contamination and to remediate the site of illegal disposal. Plaintiff alleges that it has spent in excess of $2 million in complying with this order.

## II. ISSUES

The Court, at a status conference held on April 20, 1990, requested that the parties submit cross-motions for summary judgment on two issues. First, the Court requested that the parties brief the issue of whether the indemnity clause bars plaintiff's action. If defendants are entitled to indemnification from plaintiff for any liability under CERCLA, plaintiff's suit against defendants for contribution is meaningless. Second, the Court requested that the parties brief the issue of whether defendants fall within the ambit of the statute—that is, whether defendants "arranged for the disposal of hazardous substances." 42 U.S.C. § 9607(a)(3). Because the Court holds that the indemnity clause bars plaintiff's action, the Court need not address the issue of whether defendants "arranged for the disposal of hazardous substances."

## III. DISCUSSION

Plaintiff contends that the indemnity clause does not bar plaintiff's action for three reasons. First, plaintiff argues that defendants may not be indemnified for liability under CERCLA because indemnification for strict liability is contrary to the public policy of California. Second, plaintiff argues that the indemnity clause does not apply to CERCLA liability because the

clause's language does not expressly anticipate "CERCLA-type liability" and because the parties drafted the clause ten years before CERCLA's enactment. Third, plaintiff argues that defendants' "active negligence" bars indemnification. After briefly discussing the source of applicable law, the Court addresses each of these issues in turn.

### A. Applicable Law

 California contract law governs the Court's interpretation of the indemnity clause. The Ninth Circuit has held that state law should provide the general content of federal law with respect to interpreting a contract that releases a party from CERCLA liability. *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454, 1458–59 (9th Cir.1986). A court should apply uniform federal law to the interpretation of such a contract only when the outcome under state law would be hostile to federal interests. *Id.* at 1460. The indemnity clause at issue is part of an agreement that was executed in California. The parties were to perform their obligations under the agreement in California. As set forth below, interpretation of the indemnity clause under California law does not lead to an outcome which is hostile to federal interests. Accordingly, the law of contracts in California governs the interpretation of the indemnity clause.

However, plaintiff's argument that one may never be contractually indemnified for CERCLA liability is a threshold public policy issue. Congress has specifically addressed this issue. See 42 U.S.C. § 9607(e)(1). The Court must therefore look to the provisions of CERCLA to determine whether Congress intended to absolutely bar such agreements. See *Mardan*, 804 F.2d at 1458 ("In a case ... which implicates a federal statute, the predominant consideration must be Congressional intent....").[2]

**2.** The Court reads *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d 1454 (9th Cir.1986), to hold that the interpretation of an agreement which purports to release a party from CERCLA liability is an issue to be decided under state law, but that the threshold issue of whether such an agreement is going to be allowed at all would be an issue to be decided under uniform federal law. The *Mardan* court never considered whether contractual indemnification for CERCLA liability is absolutely prohibited. Because Congress addressed this issue, albeit in rather confusing

### B. Liability Under CERCLA and Contractual Indemnification

■ Contractual indemnification among private parties is not contrary to public policy. Plaintiff argues that defendants are barred from indemnification because CERCLA is a strict liability scheme and one cannot be indemnified by agreement for strict liability under California law. Plaintiff cites *Widson v. International Harvester Co.*, 153 Cal.App.3d 45, 60, 200 Cal.Rptr. 136, 147 (1984), for the proposition that "it would thwart basic public policy behind strict liability to permit indemnification of a strictly liable defendant under a general indemnity clause." *Widson*, however, considered the application of an indemnity agreement to the law of products liability in California. *Id.* at 49, 200 Cal.Rptr. at 139. Although CERCLA, like California products liability law, is a strict liability regime, see, e.g., *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1044 (2d Cir.1985), CERCLA and California products liability law do not necessarily embrace identical public policies. The California legislature has specifically provided that agreements which seek to indemnify a party for strict products liability are "void and unenforceable" because they are "against public policy." *Widson*, 153 Cal. App.3d at 60–61, 200 Cal.Rptr. at 147 (quoting Cal.Civ.Code § 2782). To determine the public policies which underlie CERCLA, however, the Court need not and should not examine the pronouncements of the California legislature with respect to products liability, but rather must determine the intent of Congress as expressed in the language of CERCLA itself.

> Section 107(e)(1) of CERCLA provides: No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability imposed under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1). This inartfully drafted provision seems internally inconsistent. The first sentence of section 107(e)(1) appears to *prohibit* indemnification agreements under all circumstances while the second sentence of section 107(e)(1) appears to *permit* indemnification under all circumstances. Plaintiff, in its briefs and at oral argument, has never argued that the first sentence of section 107(e)(1) prohibits indemnification agreements. Rather, plaintiff has relied on California products liability law in arguing that CERCLA indemnification agreements are contrary to public policy. While the Court rejects plaintiff's argument that California's public policy of disallowing contractual indemnification for strict products liability prohibits contractual indemnification for CERCLA liability, the Court finds it necessary to consider *sua sponte* the issue of whether the language of CERCLA itself bars contractual indemnification.

A majority of federal courts that have considered the issue have held with minimal discussion that the second sentence of section 107(e)(1) completely negates the first sentence, thereby permitting parties to bargain over indemnification for CERCLA liability under all circumstances. *See, e.g., American Nat'l Can Co. v. Kerr Glass Mfg. Corp.*, 1990 WL 125368, 1990 U.S. Dist. Lexis 10999, p. 32 (N.D.Ill.1990); *Versatile Metals, Inc. v. Union Corp.*, 693 F.Supp. 1563, 1573 (E.D.Pa.1988) *Chemical Waste Management v. Armstrong World Indus., Inc.*, 669 F.Supp. 1285, 1293 (E.D. Pa.1987); *FMC Corp. v. Northern Pump Co.*, 668 F.Supp. 1285, 1289 (D.Minn.1987), appeal dismissed, 871 F.2d 1091 (8th Cir. 1988). None of these courts have cited the legislative history of CERCLA. Rather, the majority interpretation of section 107(e)

language, this Court looks to CERCLA itself in determining whether indemnification agreements are absolutely prohibited. Even if the Court were to decide this threshold issue under state law, however, the result of this case would be the same. Plaintiff's citation to products liability law is inapposite, and the Court can conceive of no other public policy in California which precludes indemnification agreements with respect to CERCLA liability.

appears to be predicated on a public policy that parties should be able to distribute the risk of CERCLA liability as they see fit because liability under CERCLA is far reaching.

The Ninth Circuit and a minority of courts have taken another approach. Under the Ninth Circuit's rule, "all responsible parties will be fully liable to the government regardless of the indemnification contracts they have entered into." *Mardan*, 804 F.2d at 1459; see also *Rodenbeck v. Marathon Petroleum Co.*, 742 F.Supp. 1448, 1456 (N.D.Ind.1990); *Central Ill. Pub. Serv. Co. v. Indus. Oil Tank*, 730 F.Supp. 1498, 1507 (W.D.Mo.1990). At the same time, under the Ninth Circuit rule, private parties are free to contract among themselves with respect to indemnification and contribution. *Mardan*, 804 F.2d at 1459. In other words, parties are jointly and severally liable with respect to the government in order to insure that the taxpayers are not forced to bear the cost of responding to the illegal disposal of hazardous substances. Private parties, however, are free to contractually distribute the risks of liability among themselves as they see fit. The Ninth Circuit, like the majority of courts, did not cite the legislative history of CERCLA. The Ninth Circuit rule, however, has great appeal in that it assures that responsible parties rather than taxpayers will bear the cost of responding to the illegal disposal of hazardous substances without unduly limiting the freedom of private parties to contractually distribute the risk of liability.

A third and final rule was recently articulated by the Northern District of Ohio in the case of *AM International, Inc. v. International Forging Equipment*, 743 F.Supp. 525 (N.D.Ohio 1990). Under that court's rule, the first sentence of section 107(e)(1) "forbids giving effect to releases between tortfeasors in CERCLA contribution suits" while the second sentence of section 107(e)(1) "only give[s] effect to contracts binding parties otherwise not liable, to indemnify or insure liable parties." *Id.* at 530. That is, under the rule of *AM International*, indemnity agreements are prohibited to transfer liability among parties which are statutorily liable but are permitted to transfer liability to otherwise non-liable parties such as insurance companies.

The *AM International* court examined the legislative history of CERCLA more extensively than any court which has thus far considered this issue. See *Id.* at pp. 528–531. The *AM International* court cited a colloquy between Senator Randolph, a sponsor of the bill, and Senator Cannon which supports that court's interpretation of section 107(e)(1). See *Id.* at pp. 529–530. Mr. Randolph agreed with the following characterization by Senator Cannon:

> Mr. Cannon: Section 107(e)(1) prohibits transfer of liability from the owner or operator of a facility to other persons through indemnification, hold harmless, or similar agreements or conveyances. Language is also included indicating that this prohibition on the transfer of liability does not act as a bar to such agreements, in particular to insurance agreements.
>
> *The net effect is to make the parties to such an agreement, which would not have been liable under this section, also liable to the degree specified in the agreement. It is my understanding that this section is designed to eliminate situations where the owner or operator of a facility uses its economic power to force the transfer of its liability to other persons, as a cost of doing business, thus escaping its liability under the act all together.*

Mr. Randolph: That is correct.

126 Cong.Rec. 30,984 (1980) (emphasis added). This colloquy is the legislative history's only reference to the apparent contradiction of Section 107(e)(1).

Although *AM International*'s citation to the legislative history has persuasive appeal, *AM International* stands alone and is not the law of the Ninth Circuit. The law of the Ninth Circuit as articulated in *Mardan* is that parties may not contract out of liability vis-a-vis the government, but may contract out of liability vis-a-vis other private parties. *Mardan*, 804 F.2d at 1458.

Applied to the present case, if the government were to sue defendants directly, defendants could not resort to the indemnity clause to escape liability from the government. Defendants, however, would be entitled to indemnification from plaintiff. In the instant case, the federal government has not born any of the costs of responding to the illegal disposal nor has the federal government sued anybody. Rather, this is a lawsuit between private parties.

Under the law of the Ninth Circuit, the freedom of private parties to contract amongst themselves is not impinged by CERCLA. Under the Ninth Circuit and majority rules, there is no public policy against private parties bargaining over indemnity. Plaintiff's claim that California products liability law prohibits such agreements is inapposite and the Court can conceive of no other California public policy which would prohibit such agreements. Accordingly, the indemnity clause presently considered is not contrary to public policy and plaintiff's threshold argument fails.

## C. Interpretation of the Indemnity Clause

█ Plaintiff argued extensively in its briefs that the indemnity clause should not be interpreted as providing indemnification for CERCLA liability. Plaintiff contends that in order to provide indemnification for CERCLA liability, the indemnification clause must clearly contemplate "CERCLA-type liability." Under California law, however, an indemnity clause need not be so specific.

In *Pacific Telephone and Telegraph Company v. Pacific Gas and Electric Company*, 170 Cal.App.2d 387, 389, 338 P.2d 984, 985 (1959), Pacific Gas and Electric Company ("P.G. & E.") and Pacific Telephone and Telegraph Company ("Pacific Telephone") entered into an agreement under which they would share certain telephone poles. The agreement provided that the parties were to act "in conformity with . . . the duly authorized laws, regulations and ordinances that may apply" and to indemnify the other party for "all loss, damages and liability" resulting from fail-

ure to do so. *Id.* P.G. & E. installed electrical wires in violation of a California Public Utilities Commission order. *Id.* at 390, 338 P.2d at 986. P.G. & E.'s illegal installation caused the death of an employee of Pacific Telephone. *Id.* The California Court of Appeals held that the broad language of the indemnity clause required P.G. & E. to indemnify Pacific Telephone for payments made by Pacific Telephone to the survivors of its deceased employee. *Id.* at 391–92, 338 P.2d at 386–87. The court did not require the indemnity clause to list the specific laws, regulations and ordinances to which the agreement referred or the specific damages that might result from a violation thereof. *Id.*

CERCLA does not require any greater specificity than does California law. The Ninth Circuit has laid to rest any concerns that the public policies which underlie CERCLA require the parties to include more specific language in an agreement that seeks to indemnify a party for CERCLA liability than would be required under state law. In *Mardan Corp. v. C.G.C. Music, Ltd.*, 804 F.2d at 1456, the Ninth Circuit considered a "settlement agreement" in which the purchaser of a manufacturing facility agreed to release the seller from certain claims "and any other issues between them." Even though the agreement did not specifically mention "CERCLA-type liability," the Ninth Circuit applied state law and held that the agreement was sufficient to release the seller from any contributions for CERCLA liability. *Id.* at 1461. Interpreting the indemnity clause under state law, therefore, is not hostile to federal interests.

Plaintiff cites *Wiegmann & Rose Int'l Corporation v. NL Industries*, 735 F.Supp. 957 (N.D.Cal.1990), in arguing that CERCLA requires greater specificity than does California law. *Wiegmann* is easily distinguished from the present case. The language which allegedly gave rise to a release from CERCLA liability in *Wiegmann* was an "as is" clause in a deed of trust for the sale of real property. *Id.* at 959. The *Wiegmann* court found that this clause protected the seller of property from claims for breach of warranty but was not suffi-

cient to release the seller from CERCLA liability. *Id.* at 962. The "as is" clause stands in stark contrast to the unambiguous language of the indemnity clause presently before the Court. The agreement at issue unambiguously encompasses "all losses, damages and costs" resulting from any violation of law. This Court will not require the parties to the instant indemnification clause. to enumerate each and every statutory and regulatory provision which might be violated and all damages which might result from a violation of the law. To do so would be contrary to law.

Plaintiff also argues that the indemnity clause is ineffective because the parties could not have possibly contemplated CERCLA liability since CERCLA was not enacted until ten years after the parties signed the agreement. The Court does not find this argument persuasive. Plaintiff agreed "to comply with *all* applicable Federal, State and local laws, ordinances, codes, rules and regulations and to indemnify [defendants] against *all* losses, damages and costs resulting from any failure of [plaintiff] ... to do so." (Emphasis added.) In California, when an instrument specifically refers to the law, it refers not simply to the law at the time at which the parties entered into the agreement, but also the law at the time of enforcement. *City of Torrance v. Worker's Comp. Appeals Bd.*, 32 Cal.3d 371, 379, 185 Cal.Rptr. 645, 649, 650 P.2d 1162, 1166 (1982). Accordingly, this Court holds that under the agreement plaintiff was to comply with *all* laws—those enacted at the time of execution and those enacted at the time of enforcement.

Furthermore, the agreement clearly provides that plaintiff was to indemnify defendants for *all* damages resulting from violation of the law. Plaintiff cannot successfully argue that it could not anticipate in 1970 having to pay the costs of responding to its illegal disposal of hazardous substances. If Congress had never enacted CERCLA, plaintiff would have been liable nevertheless for the cost of cleaning up after its illegal disposal. The State of California pursuant to state law, not CERCLA, ordered plaintiff to respond to its illegal disposal of hazardous substances. CERCLA simply provides plaintiff a potential means to compel defendants to contribute to the response costs. Accordingly, plaintiff's argument that it did not bargain for this type of liability fails.

### D. *Active Negligence*

■ Finally, plaintiff argues that even if the indemnity clause itself is sufficient, defendants' active negligence precludes defendants from resorting to indemnification. Plaintiff's argument, however, is predicated on outdated California law. In *Markley v. Beagle*, 66 Cal.2d 951, 962, 59 Cal.Rptr. 809, 816, 429 P.2d 129, 136 (1967), the California Supreme Court held that an indemnitee under a general indemnity clause—that is, an indemnity clause that does not specifically provide indemnification for the indemnitee's own negligence—could not receive indemnification if the indemnitee was "actively negligent." Under *Markley*, an indemnitee who was merely "passively negligent," however, could receive indemnification. *Id.*

The distinction between active and passive negligence has proven impractical and has been greatly criticized. See, e.g., Conley & Sayre, Indemnity Revisited: Insurance of the Shifting Risk, 22 Hastings L.J. 1201, 1206–07 (1971). Subsequent to *Markley*, the California Supreme Court in *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal.3d 622, 633, 119 Cal.Rptr. 449, 456, 532 P.2d 97, 104 (1975), held that the dispositive inquiry is whether the language of the contract provides for indemnification under the circumstances, not whether a party claiming contractual indemnification was actively or passively negligent. While the dichotomy of active negligence and passive negligence appears to be alive and well with respect to equitable indemnification, when an express indemnification agreement exists, "[i]t is the intent of the parties as expressed in the agreement that should control." *Id.*

The present action contains little if any evidence of active negligence. However, assuming arguendo that defendants were actively negligent, the Court holds that the

clear language of the agreement indemnifies defendants nonetheless. If defendants were praying for equitable indemnification, summary judgment might be inappropriate as the Court might be confronted with a genuine issue of material fact as to whether defendants were actively negligent. However, a written indemnity agreement governs this case, and the Court will not add to the plain language of the indemnity clause which provides that defendants will be indemnified for any damages resulting from plaintiff's violation of any law. Applying the rule of *Rossmoor*, the Court holds that the language of the indemnity clause provides that defendants are to be indemnified even if they were actively negligent.

## V. CONCLUSION

The Court finds that there is no genuine issue of material fact and that defendants are entitled to judgment as a matter of law. See Fed.R.Civ.P. 56. Agreements distributing the risk of CERCLA liability among private parties are not contrary to public policy. Moreover, the indemnity clause which provides that plaintiff is to indemnify defendants for all damages resulting from violations of the law effectively indemnifies defendants for CERCLA liability. Finally, the clear language of the indemnity clause provides indemnity even if defendants were actively negligent. Because defendants would be indemnified by plaintiff for any CERCLA liability incurred as a result of plaintiff's illegal disposal of hazardous substances, plaintiff's CERCLA action against defendants is barred.

Accordingly, the Court grants defendants' motion for summary judgment against plaintiffs and denies plaintiff's motion for summary judgment against defendants.

IT IS SO ORDERED.