[Civ. No. 53344. First Dist., Div. Three. Jan. 13, 1983.]

SCOTT COMPANY et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD,
MELVIN E. STANLEY et al., Respondents.

COUNSEL

Goshkin, Pollatsek, Meredith & Lee and Jack A. Pollatsek for Petitioners.

Richard W. Younkin, William B. Donohoe, Dexter W. Young, Valerie L. Westen, Pelletreau, Moses, Larson & Alderson, Kenneth Larson, Dean, Mansell & Manchester, Stafford R. Leland, Ramos, Herlihy & Broadbeck and Thomas C. Cockle for Respondents.

OPINION

**SCOTT, J.**—Petitioners Scott Company and its insurer, Liberty Mutual Insurance Company, seek review of a decision and award of the Workers' Compensation Appeals Board after reconsideration.[1] The principal question is whether Labor Code section 5500.5 imposes liability for occupational disease or cumulative injury on employers who employed the employee in the occupation exposing him or her to the hazards of such disease regardless of whether the exposure was actually a contributing cause of the disease or injury. We conclude that it does not, and affirm the award.

---

[1]Originally, we denied the petition for writ of review without comment. The Supreme Court granted Scott Company's petition for hearing, and retransferred the matter to this court, with directions to issue the writ of review and calendar the matter for hearing. Accordingly, we will not consider employee Stanley's argument that the petition should be dismissed as untimely because petitioners improperly filed a second petition for reconsideration before the appeals board.

I

Sixty-five-year-old Melvin Stanley filed an application for workers' compensation benefits in 1979, claiming to have developed mesothelioma as a result of asbestos exposure while working for various employers from 1938 to 1970. At the hearing before the workers' compensation judge, it was stipulated that if Stanley was injured as alleged, that injury caused 100 percent permanent disability as of May 1, 1978.

The medical evidence at the hearing consisted of reports and testimony by two physicians, Lonnie K. Bristow, M.D., and H. Corwin Hinshaw, M.D. Both agreed that Stanley suffered from malignant pleural mesothelioma, a rare tumor, and that the cause of the tumor was his exposure to asbestos fibers during his employment. According to Hinshaw's report, a peculiar feature of mesothelioma is the long interval between first exposure to asbestos and the appearance of the tumor. He cited one study indicating that this latency period varies from at least 15 years to 40 years or more, and another reporting a mean latency period of 37 years, with most deaths occurring 30 to 35 years after first exposure. In this report, Hinshaw also expressed the opinion that Stanley's exposure to asbestos during the last 15 years or so would not have caused, aggravated, or accelerated the disease.

Hinshaw's testimony was more equivocal than his report. He stated, "the last 15 years of [Stanley's] employment, the last more likely 20 years or more of, let's say, a minimum of 15 years, the last 15 years would not have contributed to his present problem in my opinion." Asked again if it was his opinion that the last 20 years of employment before the diagnosis did not contribute to Stanley's present condition, Hinshaw answered, "20 or even 25."

Bristow agreed that the usual latency period was 15 to 20 years, and stated that the only area where he had a "slightly different opinion from Dr. Hinshaw" was that he believed the mesothelioma might have been present in 1976 rather than in 1978. Nevertheless, he also believed that even if Stanley had had no exposure to asbestos after 1955, he would probably still have developed mesothelioma. Hinshaw agreed with the latter statement.

Stanley was first exposed to asbestos when he began work for the Mork Company in 1938, and was frequently exposed to the substance in his work thereafter. Those periods of exposure included his employment from 1959 to 1966 with petitioner (insured by petitioner Liberty Mutual Insurance Company), in 1967 with Atlas Heating (insured by Industrial Indemnity Company), and in 1970 with Western Air (insured by Cypress Insurance Company).

The workers' compensation judge found that Stanley sustained a cumulative injury or occupational disease arising out of his employment, that the injury caused total permanent disability as of May 1, 1978, and that the last date on which he was employed in an occupation exposing him to the hazards of that disease was the last day worked for Western Air in 1970. Based on those findings, the judge entered a joint and several award for benefits, pursuant to Labor Code section 5500.5,[2] against the three carriers who insured Stanley's employers during the last 36 months of his employment during which he was exposed to asbestos: Liberty Mutual, Industrial Indemnity, and Cypress Insurance. In an opinion denying reconsideration, the judge rejected the employers' argument that section 5500.5 precludes imposition of liability on employers who exposed their employees to asbestos when there is medical testimony that the exposure was not a contributing cause of the disease. He explained, "Administrative convenience and the best interest of injured workers require that the trier of fact in workers' compensation cases be permitted to impose liability upon the last employer who did, in fact, expose to the hazards of the occupational disease whether that exposure did in fact, cause the occupational disease to manifest itself when it did or not.

"The social cost of the use of asbestos in the working environment should be borne by the industry which profits thereby, not by a single employer who, by chance, was the employer at the time, according to the consensus of medical opinion, that 'harmful exposure' occurred. To impose that social cost on that industry, and to facilitate early delivery of benefits, the Legislature has created a fictional period of injury, and that period is the last one, two, three, four or five years of employment *in the industry* prior to last day worked in that industry, . . . "

The matter was reconsidered by the appeals board en banc. (§ 115.) In a lengthy opinion reviewing the legislative history of section 5500.5, the board concluded that the section does not authorize a judgment of liability against an employer without a finding that the employment *injuriously* exposed the employee to the hazards of the occupational disease. The board then found that the medical evidence was "consistent in concluding that it is extremely unlikely that any exposure Stanley experienced after 1963 was a contributing cause of his mesothelioma." Accordingly, the board ordered Atlas Heating and Western Air dismissed, and amended the findings of fact to impose liability solely upon petitioner Scott Company, who employed Stanley from 1955-1966.[3]

---

[2]Unless otherwise indicated, all statutory references are to the Labor Code.

[3]The board also concluded that once injurious exposure has been found, the time period specified in section 5500.5 must be calculated by using calendar years elapsed rather than years or months of actual exposure to the hazards of the disease. Petitioners do not contest that portion of the board's decision.

## II

First, petitioners contend that the board's decision is inconsistent with the legislative intent underlying section 5500.5. Focusing on amendments to that section which were enacted in part to simplify administrative procedures and promote prompt receipt of benefits, petitioners argue that the Legislature must have intended that all exposure to asbestos should be presumed injurious. We disagree.

Section 5500.5 limits the employers and insurance carriers who may be held liable for an employee's recovery for a cumulative injury or occupational disease. (*Flesher* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 322, 325 [152 Cal.Rptr. 459, 590 P.2d 35].) Subdivision (a) of that section limits liability to those employers who employed the employee during a specific period " . . . immediately preceding . . . the last date on which the employee was employed in an occupation exposing him to the hazards of such occupational disease or cumulative injury . . . ." For Stanley's claim, filed on or after January 1, 1979, but before January 1, 1980, the liability period was three years.[4]

Because section 5500.5 speaks merely of exposure to hazards, rather than injurious exposure, it is susceptible to the interpretation urged by petitioners. However, section 3600 requires as a condition of compensation that an injury be proximately caused by the employment. (§ 3600, subd. (c); *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 157, 160 [65 Cal.Rptr. 155, 436 P.2d 67]; *Ross* v. *Workmen's Comp. Appeals Bd.* (1971) 21 Cal.App.3d 949, 955 [99 Cal.Rptr. 79]; *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1982) 133 Cal.App.3d 643, 652 [184 Cal.Rptr. 111].) An "injury" includes any injury *or disease arising out of the employment* (§ 3208); a "cumulative injury" is defined as "occurring as

---

[4]Section 5500.5 provides in relevant part: "(a) Except as otherwise provided in Section 5500.6, liability for occupational disease or cumulative injury claims filed or asserted on or after January 1, 1978, shall be limited to those employers who employed the employee during a period of four years immediately preceding either the date of injury, as determined pursuant to Section 5412, or the last date on which the employee was employed in an occupation exposing him to the hazards of such occupational disease or cumulative injury, whichever occurs first. Commencing January 1, 1979, and thereafter on the first day of January for each of the next two years, the liability period for occupational disease or cumulative injury shall be decreased by one year so that liability is limited in the following manner:

| For claims filed or asserted on or after: | The period shall be: |
| --- | --- |
| January 1, 1979 | three years |
| January 1, 1980 | two years |
| January 1, 1981 and thereafter | one years |

"In the event that none of the employers during the above referenced periods of occupational disease or cumulative injury are insured for workers' compensation coverage or an approved alternative thereof, liability shall be imposed upon the last year of employment exposing the employee to the hazards of such occupational disease or cumulative injury for which an employer is insured for workers' compensation coverage or an approved alternative thereof."

repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which *causes* any disability or need for medical treatment.'' (§ 3208.1, italics added.) To read section 5500.5 as petitioners suggest would be to find at least a partial repeal of that causation requirement. ██ ██ Repeals by implication, however, are not favored. We will not presume that in the enactment of statutes the Legislature intended to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) We must assume, moreover, that when passing a statute, the Legislature was aware of existing related laws and intended to maintain a consistent body of rules. (*Ibid.*)

In *City of Torrance* v. *Workers' Comp. Appeals Bd.* (1982) 32 Cal.3d 371 [185 Cal.Rptr. 645, 650 P.2d 1162], the Supreme Court summarized the evolution of section 5500.5 since its enactment in 1951. The section was enacted, the court explained, to codify the rule announced in *Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946) 29 Cal.2d 79 [172 P.2d 884]. ''As originally enacted, the section provided that an employee claiming benefits for an occupational disease could recover against any one of successive employers *whose employment contributed to the disease.*'' (*City of Torrance, supra,* at pp. 374-375, italics added; see also *Flesher* v. *Workers' Comp. Appeals Bd., supra,* 23 Cal.3d 322, 327.) In *Colonial Ins. Co.,* the court held that ''in progressive occupational diseases . . . the employee may . . . obtain an award for the entire disability against any one or more of successive employers or successive insurance carriers *if the disease and disability were contributed to by the employment furnished by the employer* . . . even though the particular employment is not the sole cause of the disability.'' (*Colonial Ins. Co., supra,* at p. 82, italics added.) Nowhere did that court suggest that liability for occupational diseases could be imposed without a causal connection between the employment and the disease.

██ In 1973, section 5500.5 was amended to limit liability for occupational disease or cumulative injury to the five years of employment immediately preceding either the date of injury or the last date on which the employee worked in an occupation which exposed him to the hazards which caused the occupational disease or cumulative injury. (*City of Torrance, supra,* 32 Cal.3d at p. 375.) In 1977, the section was again revised, to provide for the stepped reduction of the five-year limitation of liability to one year by 1981. (*Ibid.*) ''The purpose of these amendments was to provide greater certainty to insurers in anticipating costs and necessary reserves, to simplify the proceedings by reducing the number of employers and insurers required to be joined as defendants, and to reduce the burden placed on the entire system by the former procedures. [Citation.]'' (*Flesher* v. *Workers' Comp. Appeals Bd., supra,* 23 Cal.3d at pp. 327-328.) The legislative history of the 1977 amendments clearly

indicates that while the time restrictions on employer liability were concerned with streamlining procedures and allocating costs among employers and insurers, they were never viewed as eliminating the fundamental causation requirement. (Assem. Com. on Finance, Insurance and Commerce, Interim Hearings on the Problems of Assuring Payments of Compensation for Cumulative Occupational Injuries (Jan. 12 & 19, 1977) pp. 114-115, 126, 188, 190, 198, 225, 237.) At those hearings, moreover, it was expressly recognized that the proposed time restrictions on employer liability would not resolve the problem of the "long tail liability" of diseases such as mesothelioma. (*Id.*, at p. 198.)

■ In summary, we find no indication that the Legislature intended to eliminate the causation requirement when it amended section 5500.5. It is undisputed that with those amendments, the Legislature sought to ameliorate "the procedural morass faced by the board and the parties in multiple defendant cases." (*Harrison* v. *Workmen's Comp. Appeals Bd.* (1974) 44 Cal.App.3d 197, 201 [118 Cal.Rptr. 508].) It is also apparent, however, that in cases involving asbestos-caused mesothelioma, that procedural morass will continue unless the Legislature decides to impose liability on employers who have merely exposed the employee to the hazards of the disease whether or not there is medical evidence of causation.

### III

Petitioners then contend that the board's finding that the last date of injurious exposure was in 1963 is not supported by the evidence.

■ The board is empowered to resolve conflicts in the evidence and to make its own credibility determination. (*Cansdale* v. *Board of Administration* (1976) 59 Cal.App.3d 656, 664 [130 Cal.Rptr. 880].) ■ Its factual determinations must be upheld if its findings are supported by substantial evidence in the light of the entire record. (§ 5952, subd. (d); *Martinez* v. *Workers' Comp. Appeals Bd.* (1976) 15 Cal.3d 982, 985 [127 Cal.Rptr. 150, 544 P.2d 1350]; *LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) ■ Medical reports and opinions are not substantial evidence if they are based on surmise, speculation, conjecture, or guess. (*Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967].) Nevertheless, words of conjecture in a medical report may be construed, in the proper context, as statements of medical probability, and the board may choose the most persuasive among conflicting medical reports. (*Patterson* v. *Workers' Comp. Appeals Bd.* (1975) 53 Cal.App.3d 916, 923, fn. 3 [126 Cal.Rptr. 182]; see *Schnear* v. *Boldrey* (1971) 22 Cal.App.3d 478, 484 [99 Cal.Rptr. 404].)

■  The medical evidence consisted of the reports and testimony of physicians Hinshaw and Bristow. That evidence serves to highlight the impossibility of ascertaining with absolute certainty the last employment exposure which has contributed to an employee's mesothelioma. Absolute certainty, however, is not required. (See *Foremost Dairies* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d 560, 573 [47 Cal.Rptr. 173].) Here the two physicians believed it possible that Stanley might have developed the disease even if he had had no asbestos exposure after 1955. Nevertheless, they also both agreed that it was extremely unlikely that any exposure within the last 15 years (or after 1963) contributed to the development of the tumor. The latter conclusion was not simply conjecture or guess, but was apparently based on the study cited by Hinshaw which reported no mesotheliomas among several thousand asbestos insulation workers within the first 15 years following their initial exposure to asbestos. Their testimony, then, was a statement of " . . . medical probabilities, giving what in the light of medical science appeared to be the most probable explanation of the event. [Citation.]" (*Schnear* v. *Boldrey, supra,* 22 Cal.App.3d at p. 484.) The board's finding that the last date of injurious exposure was in 1963 is supported by substantial evidence.

The order is affirmed.

White, P. J., and Feinberg, J., concurred.