Filed 2/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CITY OF SOUTH SAN FRANCISCO,<br><br>     Petitioner,<br><br>v.<br><br>WORKERS' COMPENSATION<br>APPEALS BOARD and CITY OF<br>PACIFICA,<br><br>     Respondents. | A151857<br><br>(W.C.A.B. No. ADJ2151993) |

Richard Johnson worked successively as a firefighter for the City of South San Francisco (CSSF) and for the City of Pacifica (Pacifica). He developed a nasopharyngeal cancer. Labor Code section 3212.1[1] establishes a presumption that cancer manifesting during and for a specified period following employment in certain public safety positions, including firefighters, arose out of and in the course of that employment. Section 5500.5, subdivision (a) (section 5500.5(a)), however, limits employer liability for a cumulative injury to the employer who employed the applicant during the one year preceding the *earliest* of (1) the date of injury or (2) the last date of injurious exposure to the hazards that caused the injury. Thus, either CSSF or Pacifica would be potentially responsible for compensation for the entire injury, dependent upon the proper application of section 5500.5(a).

CSSF settled a workers' compensation claim by Johnson for this injury and petitioned for contribution from Pacifica. An arbitrator denied the petition, ruling that evidence of the latency period for the cancer suffered by Johnson showed the injurious

_____

[1] Undesignated statutory references are to the Labor Code.

1

exposure under section 5500.5(a) occurred during Johnson's earlier employment with CSSF. The Workers' Compensation Appeals Board (WCAB) upheld and adopted the arbitrator's order.

CSSF petitioned for review, contending the WCAB, in adopting the arbitrator's determination, erroneously utilized a more lenient preponderance evidentiary standard in applying section 5500.5(a), rather than the more stringent cancer presumption rebuttal standard provided in section 3212.1. We have granted review, but affirm the determination of the WCAB.

## I.    BACKGROUND

Johnson worked as a firefighter for CSSF from March 1973 to October 2001, and for Pacifica from November 2001 on. He was exposed to known carcinogens during each period of employment. In 2007, he was diagnosed with nasopharyngeal cancer, which had metastasized and caused a growth in his neck. The cancer was found to have initially manifested itself during 2005, when Johnson first noted symptoms of nasal obstruction. The *disability* was found to have occurred in 2007, during Johnson's employment with Pacifica.[2]

Johnson filed a workers' compensation claim against Pacifica. He invoked the presumption of section 3212.1 that cancer manifesting during (or within certain periods following) employment as a firefighter that involves exposure to known carcinogens arose out of and in the course of that employment. (§ 3212.1, subd. (b).)[3] The

_____

[2] "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment." (§ 5412.)

[3] Section 3212.1 provides in relevant part: "(a) This section applies to all of the following: [¶] (1) Active firefighting members, whether volunteers, partly paid, or fully paid, of all of the following fire departments: [¶] (A) A fire department of a city, county, city and county, district, or other public or municipal corporation or political subdivision. [¶] . . . [¶] (b) The term 'injury,' as used in this division, includes *cancer*, including leukemia, that develops or manifests itself during a period in which any member described in subdivision (a) is in the service of the department or unit, if the member

2

presumption may be rebutted if the employer shows the primary site of the cancer has been identified and "the carcinogen to which the member has demonstrated exposure is not reasonably linked to the disabling cancer." (§ 3212.1, subd. (d).) Pacifica denied liability and joined CSSF as a party to the case.[4] CSSF eventually settled with Johnson for all of his cancer-related compensation, and it then sought contribution from Pacifica.

The contribution case was submitted to arbitration based on a documentary record. (See § 5275, subd. (a)(2).) CSSF and Pacifica stipulated to "a single cumulative trauma period for purposes of assessing liability. The effect of this is that one party will bear full responsibility for the benefits paid . . . ." The issues submitted to the arbitrator concerned application of sections 3212.1 and 5500.5. Section 5500.5 provides that, in Johnson's circumstances, "liability for . . . cumulative injury claims . . . shall be limited to those employers who employed the employee during a period of [one year] immediately preceding either [(1)] the date of injury, as determined pursuant to Section 5412, or [(2)] the last date on which the employee was employed in an occupation exposing him or her to the hazards of the . . . cumulative injury, whichever occurs first."

---

demonstrates that he or she was exposed, while in the service of the department or unit, to a known carcinogen as defined by the International Agency for Research on Cancer, or as defined by the director. [¶] . . . [¶] (d) The cancer so developing or manifesting itself in these cases shall be presumed to arise out of and in the course of the employment. This presumption is disputable and may be controverted by evidence that the primary site of the cancer has been established and that the carcinogen to which the member has demonstrated exposure is not reasonably linked to the disabling cancer. Unless so controverted, the [WCAB] is bound to find in accordance with the presumption." (Italics added.)

[4] CSSF was also potentially subject to the section 3212.1 presumption because the presumption applies "following termination of service for a period of three calendar months for each full year of the requisite service, but not to exceed 60 months in any circumstance." (§ 3212.1, subd. (d), as amended by Stats. 2000, ch. 887, § 1, p. 6528; cf. Stats. 2010, ch. 672, § 1, p. 3656 [increasing maximum to 120 months].) Johnson worked for CSSF for 28 full years and was entitled to the maximum extension of 60 months or five years (28 x 3 = 84 months or 7 years) following the end of his CSSF employment in October 2001, i.e., through October 2006. The 2005 manifestation of cancer fell within this presumptive period.

(§ 5500.5(a).)[5]  The arbitrator determined the date of injury was in 2007.  The dispositive issue was whether the last *injurious* exposure resulting in the injury occurred during CSSF or Pacifica employment.

The medical evidence before the arbitrator consisted of written reports and deposition testimony by Ira Fishman, M.D., the agreed medical examiner in Johnson's case against Pacifica.[6]  Fishman acknowledged there was little epidemiological literature regarding occupational risks for nasopharyngeal cancer, firefighting had "only a possible link" to the cancer,[7] the cause of the cancer was unknown, and no studies established a latency period for the cancer.  However, he testified that the latency period for exposure-related solid tumors generally was a minimum of 10 years.[8]  Based on that latency period, he opined that Johnson's last harmful carcinogen exposure occurred in 1996 or 1997, and that Johnson's six-year employment with Pacifica was not causally linked to his cancer.

The arbitrator found Fishman's evidence credible and persuasive.  He found that Fishman "made a convincing case" that the CSSF exposure was the causative factor in

[5] Section 5500.5 provides in relevant part:  "(a) Except as otherwise provided in Section 5500.6, liability for occupational disease or cumulative injury claims . . . shall be limited to those employers who employed the employee during a period of [one year] immediately preceding either the date of injury, as determined pursuant to Section 5412, or the last date on which the employee was employed in an occupation exposing him or her to the hazards of the occupational disease or cumulative injury, whichever occurs first. . . . [¶] . . . [¶] If, based upon all the evidence presented, the [WCAB] or workers' compensation judge finds the existence of cumulative injury or occupational disease, liability for the cumulative injury or occupational disease shall not be apportioned to prior or subsequent years . . . ."

[6] Fishman was board certified in internal medicine.

[7] Fishman concluded that without application of the cancer presumption for firefighters, there was insufficient epidemiological literature to conclude with reasonable medical probability that Johnson's occupation as a firefighter led to the development of nasopharyngeal cancer.

[8] Fishman testified a further delay occurred between appearance of Johnson's nasopharyngeal tumor and its metastasis, causing the growth in Johnson's neck, but he could not quantify that delay.  He also testified it was unknown whether ongoing exposure to a carcinogen contributes to the development of cancer after a tumor initially appears.

4

Johnson's development of cancer, given the latency period involved, and that CSSF, while emphasizing deficiencies in Fishman's opinions, had not offered any contrary medical opinion. The arbitrator further found that Fishman's opinion provided "substantial evidence" on the question of latency, and that "the weight of the evidence shows [CSSF] employment as being within the latency period, and there is no medical evidence showing that either [CSSF] fell outside the injurious period vis-à-vis latency or that the Pacifica employment was the proper time frame given the latency period for nasopharyngeal cancer."

The arbitrator denied CSSF's petition for contribution. In doing so, he distinguished between the enhanced burden an employer must meet under section 3212.1 to rebut liability to the employee for the injury (i.e., establishing the absence of a "reasonable link" between the cancer and the industrial exposure to the carcinogen), and what he found to be the applicable preponderance of the evidence standard in a contribution action between employers (i.e., whether it is more likely that the cancer arose from one or another period of employment). The arbitrator wrote: "Had [Johnson] only been employed by Pacifica, with no prior public safety employment, it is likely that on this record of six years employment with Pacifica, the exposure to carcinogens and the operation of the presumption, that he would have established a compensable injury case as to Pacifica. . . . [However, t]he fact that there is exposure with both [CSSF] and Pacifica shifts the factual determination solely to which employment is injurious . . . . [¶] . . . [B]etween Pacifica and [CSSF], the stronger case is that the latency period implicates the [CSSF] employment."

CSSF petitioned for reconsideration. The arbitrator wrote a report and recommendation defending his original award (Award) and recommending denial of the petition. The WCAB adopted the arbitrator's report and recommendation and denied CSSF's petition for reconsideration. CSSF petitioned for review (§ 5950), arguing that (1) the arbitrator acted in excess of his power by failing to apply the "no reasonable link" standard of proof for rebuttal of the section 3212.1 cancer presumption; and (2) the

5

arbitrator's findings of fact and award are unreasonable and not supported by substantial evidence.[9]

## II.   DISCUSSION

"When considering a petition for a writ of review on a decision of the WCAB, ' " ' "[we] must determine whether the evidence, when viewed in light of the entire record, supports the award of the WCAB.  [We] may not reweigh the evidence or decide disputed questions of fact," ' " ' " unless we determine the WCAB's factual findings to be " ' " ' "unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme." ' " ' " (*City of Long Beach v. Workers' Comp. Appeals Bd.* (*Garcia*) (2005) 126 Cal.App.4th 298, 310.)  "[U]nless clearly erroneous[,] the WCAB's interpretation of the workers' compensation laws is entitled to great weight." (*Genlyte Group, LLC v. Workers' Comp. Appeals Bd.* (2008) 158 Cal.App.4th 705, 714; *Griffith v. Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 1260, 1263–1264 ["contemporaneous administrative construction of a statute by the [WCAB], as the administrative agency charged with its enforcement and interpretation, while not necessarily controlling, is of great weight; and courts will not depart from such construction unless it is clearly erroneous or unauthorized"].)  "Nevertheless, issues of statutory interpretation and questions of law are subject to our independent review, and we need not defer to the WCAB's legal determinations where they are contrary to the plain meaning of the statute or prevailing case law." (*Contra Costa County v. Workers' Comp. Appeals Bd.* (2015) 240 Cal.App.4th 746, 756.)

A.    *The Arbitrator's Factual Findings*

The arbitrator found the expert medical testimony credible.  Based on evidence of the latency period for nasopharyngeal cancer, he concluded that "the weight of the evidence" established that Johnson's *injurious* exposure occurred during his CSSF employment, and not during his Pacifica employment—i.e., that Johnson's cancer was *caused* by his CSSF exposure.

---

[9] The WCAB declined to file an answer to CSSF's petition.

6

Pacifica argues that "the arbitrator specifically found that the [section] 3212.1 presumption *was* rebutted" and thus "did *not* use a different legal standard to adjudicate the contribution claim." (Italics added.) We disagree with that reading of the arbitrator's opinions.

Pacifica relies upon the following language from the arbitrator's summary of rulings at the beginning of the Award: "Was there injurious exposure with Pacifica under . . . section 5500.5 considering the latency period of applicant's cancer? NO [¶] . . . If the . . . section 3212.1 presumption applies as to Pacifica, is it rebutted by evidence of latency? YES." However, the arbitrator articulated no such finding in the body of the written Award. Moreover, in his report and recommendation, the arbitrator *revised* the summary of rulings to read: "Was there injurious exposure with Pacifica under . . . section 5500.5 considering the latency period of applicant's cancer? YES [¶] . . . If the . . . section 3212.1 presumption applies as to Pacifica, is it rebutted by evidence of latency? NO." In light of these inconsistencies in the summaries, we consider only the fully-articulated reasoning in the body of the opinions.

In addition, the Award clearly indicates the arbitrator was inclined to find Pacific had *not* rebutted the section 3212.1 presumption. "While Pacifica's [evidence] may have been insufficient to defeat an injury claim by an injured worker, here, . . . the question of latency is . . . determined by weighing the evidence presented by the parties. [¶] As we know from *Garcia*[*, supra,* 126 Cal.App.4th 298], . . . [t]he employer has the affirmative burden of disproving the link [between the exposure and the cancer], but as noted above, that is for the limited question of determining whether applicant sustained a compensable industrial injury." The arbitrator's report and recommendation similarly indicates application of the preponderance of evidence standard to the *injurious* exposure issue rather than the section 3212.1 presumption rebuttal standard, and that the arbitrator likely would *not* have found the presumption rebutted had he applied the section 3212.1 standard.

Therefore, we reject Pacifica's argument that the arbitrator made a factual finding that Pacifica rebutted the section 3212.1 presumption.

7

B.     *The Legal Standard*

CSSF argues the arbitrator applied the wrong legal standard to determining which of the employers was liable for Johnson's cumulative injury.  We disagree.

1.     *The Section 3212.1 Employer Rebuttal Standard*

" 'In the usual workers' compensation case, before an employer can be held liable, the worker must show not only that the injury arose out of and in the course of employment' but also that the injury was proximately caused by the employment.  [Citations.]  The burden is on the employee to show proximate cause by a preponderance of the evidence.  [Citations.]  However, in the case of certain public employees who provide 'vital and hazardous services' to the public [citation], the Labor Code contains a series of presumptions of industrial causation.  These presumptions provide that when specified public employees develop or manifest particular injuries or illnesses, during their employment or within specified periods thereafter, the injury or illness is presumed to arise out of and in the course of their employment.[10]  [Citations.]  These presumptions are a reflection of public policy.  [Citations.]  Their purpose is to provide additional compensation benefits to employees who provide vital and hazardous services by easing their burden of proof of industrial causation."  (*Garcia, supra,* 126 Cal.App.4th at pp. 310–311.)

As originally enacted, section 3212.1, the cancer presumption, "imposed on the employee the burden of demonstrating . . . that the carcinogen [to which the employee was exposed] was reasonably linked to the disabling cancer."  (*Garcia, supra,* 126 Cal.App.4th at p. 312, fn. omitted.)  Because this standard placed an unreasonable burden on employees, the statute was amended in 1999 to require the *employer* to prove the carcinogen of exposure was *not* reasonably linked to the disabling cancer.  (*Id.* at pp. 312–313.)  "The inescapable conclusion is that the Legislature intended to remove the

---

[10] See, e.g., § 3212 et seq. (hernia, heart trouble, pneumonia, tuberculosis, blood-borne infectious diseases, meningitis, skin cancer, Lyme disease, lower back impairments).

8

burden from employees and enable them to obtain benefits even when it was not possible to prove the cancer was linked to the particular carcinogen." (*Id.* at p. 315.)

While other workers' compensation presumption statutes allow employers to rebut the presumption with any " 'other evidence,' " section 3212.1 "requires the link be controverted only in a specific and limited way: by proof of the cancer's primary site and the absence of a reasonable link." (*Garcia, supra,* 126 Cal.App.4th at p. 315.) *Garcia* holds that "an employer demonstrates the absence of a reasonable link if it shows no connection exists between the carcinogenic exposure, or that any such possible connection is so unlikely as to be absurd or illogical. . . . [T]he statute does *not* require the employer to prove 'the absence of *any possible* link.' . . . [¶] [On the other hand, a]n employer does not meet its burden merely by showing that no studies exist showing a positive link between the exposure and the particular form of cancer. . . . The *absence* of medical evidence linking a known carcinogen with a particular form of cancer simply represents a void of information, and cannot be considered proof a reasonable link does not exist." (*Garcia*, at p. 316, fn. omitted; see *Faust v. City of San Diego* (2003) 68 Cal.Comp.Cases 1822 [WCAB en banc decision reaching similar conclusion].) *Garcia* acknowledges this burden is high, but observes, "There appears to be no inherent reason why the employee, rather than the employer, should bear the burden of an absence of scientific knowledge." (*Garcia*, at p. 316.)

2.    *Section 5500.5*

As noted *ante*, section 5500.5 provides that liability for a cumulative injury is limited to those employers who employed the employee during one year preceding the earlier of (1) the date of injury per section 5412 (here in 2007, during Pacifica employment), or (2) "the last date on which the employee was employed in an occupation exposing him or her to the hazards of the occupational disease or cumulative injury." (§ 5500.5(a).) Although the second phrase appears to refer to *any* exposure to the hazards during a period of employment, this court has held that other provisions in the workers' compensation statutory scheme require proof of proximate causation before liability may be imposed. (*Scott Co. v. Workers' Comp. Appeals Bd.* (1983)

9

139 Cal.App.3d 98, 104–105, citing §§ 3600, subd. (c), 3208, 3208.1.)  Thus, an employer is not liable under section 5500.5(a) absent evidence that exposure during that employment was a contributing cause of the disease or injury, i.e., that the exposure was *injurious*.  (*Scott Co.,* at pp. 101, 104.)

The purpose of section 5500.5(a) is "to provide greater certainty to insurers in anticipating costs and necessary reserves, to simplify the proceedings by reducing the number of employers and insurers required to be joined as defendants, and to reduce the burden placed on the entire system by the former procedures.  [Citations.]  The insurance industry favored these amendments and reasoned that the total burdens and benefits upon employers and insurers would more or less even out, for while they might be required to assume a larger liability in some cases, they would also be absolved of liability in other cases."  (*Flesher v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 322, 328; see *Scott Co. v. Workers' Comp. Appeals Bd., supra,* 139 Cal.App.3d at p. 105 [quoting *Flesher*'s statement of § 5500.5's legislative purpose].)  The statute also ensures that "an employee disabled by a progressive occupational disease may obtain an award for his entire disability against any one or more of his successive employers or insurance carriers and that those held liable have the burden of seeking apportionment [in subsequent proceedings]."  (*Flesher*, at p. 327.)

3.    *Analysis*

Johnson was exposed to the hazards of the occupational disease or suffered cumulative injury during his final employment with Pacifica.[11]  His cancer manifested itself during that employment.  The section 3212.1 presumption would establish the existence of an industrial injury for which Pacifica would be liable absent rebuttal by evidence of no reasonable link between the carcinogens to which Johnson was exposed and the disabling cancer.  To rebut the presumption, Pacifica would be required to "explicitly demonstrate that medical or scientific research has shown that there is no

_____

[11] The agreed medical examiner, Fishman, questioned whether there was sufficient evidence of Pacifica exposure to trigger the presumption.  The parties' stipulation made this issue moot.

10

reasonable inference that exposure to the specific known carcinogen or carcinogens is related to or causes the development of the cancer," i.e., evidence of reasonable medical probability that a reasonable link does not exist. (*Faust v. City of San Diego, supra,* 68 Cal.Comp.Cases at p. 1832.) But, because the cancer manifested itself within five years after he left employment with CSSF (in October 2001), CSSF was subject to the same presumption. (§ 3212.1, subd. (d).) As the arbitrator noted, "[W]e have two employers with injurious exposure and two employers who are bound by the 3212.1 presumption."[12]

The issue is not whether Johnson was entitled to compensation for his injury. He was, and has been. The only question is, as between two otherwise individually liable employers, who pays? CSSF contends that application of section 5500.5(a) is a straightforward process of applying a one-year time frame to any period of employment causally linked to the cumulative injury, and that the section 3212.1 presumption establishes that link unless adequately rebutted. In other words, the last public safety employer presenting any carcinogen exposure would bear the sole responsibility in that circumstance.[13] But *Scott Co. v. Workers' Comp. Appeals Bd., supra,* 139 Cal.App.3d at pages 104–105, establishes that employers may be held liable under section 5500.5(a) only if their employment is causally linked to the employee's cumulative injury.[14] The

---

[12] The arbitrator's reference to "injurious exposure" including Pacifica is somewhat confusing in that exposure is only "injurious" if it "causes disability or need for medical treatment." (§ 3208.1.) The reference is, however, consistent with the arbitrator's view that the parties might have hypothetically "developed a case for two periods of cumulative trauma—one for each employer in that the presumption applied to each."

[13] It is, strictly speaking, a misnomer to characterize this as a "contribution" action. Contribution seeks equitable sharing of liability between co-obligors. (See *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061, 1067 [co-insurers].) This is more accurately a proceeding to allocate singular responsibility between two employers. (See § 5500.5, subd. (e) [employer action to determine "apportionment of liability or right of contribution"].)

[14] We also question whether Johnson's injury is properly characterized as "cumulative" in this context, although the parties here stipulated to a single period of

ordinary causation test is proximate causation, established by a preponderance of the evidence. (*Garcia, supra,* 126 Cal.App.4th at p. 310; § 3202.5.)

Section 3212.1 does not eliminate the requirement that an industrial injury be proximately caused by the hazardous exposure. Instead, it applies presumptions of a causal link between exposure to the industrial hazard (a known carcinogen) and the manifested injury (cancer), unless the employer disproves the existence of such a link. Absent such proof, the WCAB is "bound to find in accordance with the presumption." (§ 3212.1, subd. (d).) "These presumptions are a reflection of public policy . . . to provide additional compensation benefits to employees who provide vital and hazardous services by easing their burden of proof of industrial causation." (*Garcia, supra,* 126 Cal.App.4th at pp. 310–311; see *id.* at p. 315.) We agree with the arbitrator's conclusion that "[t]he purpose [of section] 3212.1 . . . was to protect the injured worker and not to protect one employer over another."

We simply do not find that same worker protection policies embodied in section 3212.1 implicated in allocation of liability between employers. CSSF argues that applying a lower rebuttal standard to contribution proceedings would encourage employers to deny presumptive claims and would result in additional denials and litigation of presumptive cases. CSSF does not explain why it would be less probable, rather than more, that a public safety employer subject to the presumption would seek to join any other potentially liable employer in the employee claim proceeding if the

_____

cumulative trauma for purposes of assessing liability. "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment . . . ." (§ 3208.1.) Johnson had cumulative *exposure* to carcinogens over the course of his successive periods of employment, but Fishman could not say whether continuing exposure to carcinogens could contribute to the development of cancer even after it first manifests. The arbitrator here was required to make a binary determination as to which period of exposure was *injurious*.

12

section 3212.1 presumption applied to a contribution claim.[15]  But litigation between employers subject to the section 3212.1 presumption does not require participation by the employee, and an employer's unreasonable delay or refusal to pay benefits is subject to sanction.  (See § 5814.)  "Section 5500.5 is long and complex, but its design is reasonably clear.  It is intended to allow an employee to recover for his entire cumulative injury from one or more employers of his choosing for whom he worked within the preceding five years, even though a portion of his injury was incurred in prior employments.  The employer or employers against whom compensation is awarded are in turn authorized to seek contribution from other employers in the five-year period."  (*Flesher v. Workers' Comp. Appeals Bd., supra*, 23 Cal.3d at pp. 325–326, fn. omitted.)  A proceeding to determine an apportionment of liability or right of contribution between employers "shall not diminish, restrict, or alter in any way the recovery previously allowed the employee or his or her dependents, but shall be limited to a determination of the respective contribution rights, interest or liabilities of all the employers joined in the proceeding . . . ."  (§ 5500.5, subd. (e).)

    In the Award, the arbitrator cited *City of Huntington Beach v. Workers' Comp. Appeals* (*Dalbey*) (2016) 81 Cal.Comp.Cases 740 as authority for "placing liability on the earlier employer even though the [cumulative injury] manifested during the subsequent employ[ment] [and] even though the presumption was operative against the subsequent employer as well as the earlier employer."  In that case, a public safety officer invoked different presumptions (§§ 3212, 3212.5) that his cardiovascular injuries were caused by successive employment for the City of Huntington Beach and Orange County.  (*Dalbey*, at p. 741.)  Although the presumptions applied to both employers the workers' compensation judge made a factual finding, based on medical testimony, that the actual date of injury was during the earlier Huntington Beach employment, even though it did not manifest until his subsequent employment with Orange County.  While not discussing

---

[15] As CSSF notes in its petition for review, section 3212.1 "makes rebuttal of a cancer claim difficult if not impossible."

the applicable standard of proof, the WCAB adopted the workers' compensation judge's findings, rejecting Huntington Beach's claim that section 5500.5 required liability to be imposed based upon the last one year of harmful exposure. *Dalbey* certainly assumes that injury causation as an issue of fact remains the relevant question in a section 5500.5 allocation.

Nothing expressed in section 5500.5 imposes the rebuttal proof standards of section 3212.1, and we find nothing implied, either in that statute or in the statutory scheme. As the *Garcia* court observed, "section 3212.1's burden-shifting paradigm differs from that contained in other workers' compensation presumption statutes. Nearly all the other presumption statutes state that the presumption may be controverted 'by other evidence.' [Citations.] Section 3212.1, on the other hand, requires the link be controverted only in a specific and limited way: by proof of the cancer's primary site and the absence of a reasonable link." (*Garcia, supra*, 126 Cal.App.4th at p. 315.)

C.      *Substantial Evidence*

The arbitrator made a factual determination, based on medical opinion of the latency period of the cancer, that the date of Johnson's *injury* was during his CSSF employment. CSSF insists that this determination lacks support in substantial evidence. " '[S]ubstantial evidence' means evidence 'which, if true, has probative force on the issues. It is more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . . It must be reasonable in nature, credible, and of solid value . . . .'" (*Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 164, italics omitted.)

"When considering a petition for a writ of review on a decision of the WCAB, ' " ' "[t]his court must determine whether the evidence, when viewed in light of the entire record, supports the award of the WCAB. This court may not reweigh the evidence or decide disputed questions of fact. [Citations.] However, this court is not bound to accept the WCAB's factual findings if determined to be unreasonable, illogical, improbable or inequitable when viewed in light of the overall statutory scheme." ' " ' " (*Garcia, supra*, 126 Cal.App.4th at p. 310.) CSSF premises its challenge largely on the assumption that

14

the section 3212.1 rebuttal standard applies.  We review the evidence in light of what we have determined to be the applicable preponderance standard.

*Garcia* notes that one method of meeting the employer's burden, even under section 3212.1, is to show "it is highly unlikely the cancer was industrially caused because the period between the exposure and the manifestation of the cancer is not within the cancer's latency period."  (*Garcia, supra*, 126 Cal.App.4th at p. 317.)  *Garcia* cites *Riverview Fire Protection Dist. v. Workers' Comp. Appeals Bd.* (1994) 23 Cal.App.4th 1120 as an example.  (*Garcia*, at p. 317.)  In *Riverview*, which applied the former version of section 3212.1 that required the *employee* to prove a reasonable link between the demonstrated exposure and the cancer (*Riverview*, at p. 1124), the court held that the employee failed to prove a reasonable link where no medical studies showed an increased risk of stomach cancer in firefighters and the available medical evidence showed cancers generally appeared decades after chemical exposure and the relevant employment period was less than 10 years (*id.* at pp. 1128–1129).  WCAB panels have repeatedly found the presumption rebutted with medical evidence of a latency period for the *particular* type of cancer suffered by the employee.[16]  (See, e.g., *Suarez v. Dept. of Forestry and Fire Protection* (Jan. 15, 2015, ADJ8691488) 2015 Cal.Wrk.Comp. P.D. Lexis 11, *7 [five-year latency period for leukemia; employment began 2011 and manifestation/diagnosis in 2012]; *Oyler v. County of Sonoma* (Apr. 15, 2015, ADJ8518473) 2015 Cal.Wrk.Comp. P.D. Lexis 228, *14–*15 [11- to 30-year latency period for kidney cancer; employment began 2007 and manifestation/diagnosis in 2012].)  In contrast, the panel in *Bigelow v. City of Paso Robles* (Nov. 7, 2013, ADJ7949972) 2013 Cal.Wrk.Comp. P.D. Lexis 532 ruled that "discussion of latency periods for cancers *in general*" was not sufficient to rebut the presumption.  (*Id.* at p. *14, italics added ; see *id.* at pp. *15–*17.)  The employee in *Bigelow* had contracted colon cancer (*id.* at p. *4), and the expert "admitted . . . there are no studies showing a specific latency period for colon cancer. . . . [H]e

---

[16] WCAB panel decisions are "citable authority, especially as an indication of contemporaneous interpretation and application of workers' compensation laws." (*Griffith v. Workers' Comp. Appeals Bd., supra,* 209 Cal.App.3d at p. 1264, fn. 2.)

looked at the latency period for other cancers where 'you have a fighting chance to identify a latency period,' and relied upon those latency periods for other cancers to opine that it is 'not unreasonable to think of 15, 20 years of latency' for applicant's colon cancer to develop. [¶] . . . [He] acknowledged that no carcinogen has been identified as causative of colon cancer and without that information the latency period for colon cancer cannot be determined." (*Id.* at p. *15.) The panel held this evidence did not meet the rebuttal standard because "*thinking* that there likely is a latency period for colon cancer is much different from proving that applicant's colon cancer is not reasonably linked to his exposure to carcinogens at work." (*Id.* at pp. *15–*16, italics added.)

Here, Fishman acknowledged that Johnson suffered a fairly rare form of cancer of uncertain etiology. He testified in his deposition that no specific latency period had been established for nasopharyngeal cancer by peer reviewed scientific studies, but based his opinion on the general latency period for exposure-related solid tumors in humans. Citing medical literature, he opined: "For most tumors, . . . the latency interval is approximately 12–25 years . . . [and] exposure related solid tumors in humans appear to require a minimum of 10–12 years and often longer latency from exposure to clinical evidence of cancer." Fishman testified that he was aware of no shorter latency period for hard tumors, and in his medical opinion, there would be a *minimum* 10-year latency *in this case*. CSSF presented no contrary medical evidence, and the arbitrator found Fishman's expert medical testimony to be credible and persuasive. The findings based on that testimony are not " ' " ' "unreasonable, illogical, improbable or inequitable," ' " ' " and we consequently do not reweigh the evidence or decide disputed questions of fact. (*Garcia, supra,* 126 Cal.App.4th at p. 310.) Applying what we find to be proper preponderance standard, we find that the evidence, viewed in light of the entire record, supports the award of the WCAB.

### III.   DISPOSITION

The June 5, 2017 WCAB order denying CSSF's petition for reconsideration is affirmed. CSSF shall bear Pacifica's costs on appeal.

16

_____

BRUINIERS, J.


WE CONCUR:


_____

JONES, P. J.


_____

SIMONS, J.


A151857

Richard, Thorson, Graves & Royer, Daniel E. Graves and Henry J. Gage III for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Thomas, Lyding, Cartier, Arnone & Daily and Mark A. Cartier for Respondent City of Pacifica.